UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PRISON LEGAL NEWS, | CASE NO. C14-479 MJP |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al., | |
| Defendants. | |

THIS MATTER comes before the Court on the Parties' cross-motions for summary judgment.  (Dkt. Nos. 24, 28.)  Having considered the Parties' briefing and the related record, the Court hereby GRANTS Plaintiff's Motion for Summary Judgment (Dkt. No. 24) and DENIES Defendants' Cross-Motion for Summary Judgment (Dkt. No. 28).

**Background**

Plaintiff Prison Legal News, a monthly news magazine dedicated to reporting and advocacy concerning the elevated telephone rates that prisons and contractors charge incarcerated people, brings suit against the Department of Homeland Security ("DHS") and

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT, DENYING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT- 1

1  Immigration and Customs Enforcement ("ICE") alleging that various actions taken by

2  Defendants have violated the Freedom of Information Act ("FOIA").  (Dkt. No. 33.)

3         Prison Legal News is a project of the Human Rights Defense Center ("HRDC"), a

4  nonprofit charitable organization that focuses on "public education, prisoner education, advocacy

5  and outreach in support of the rights of prisoners and in furtherance of basic human rights."

6  (Dkt. Nos. 24 at 7, 25 at 1-3.)  For several years, Plaintiff and HRDC have been gathering

7  information through public records requests about prison phone policies and practices, with

8  special focus on identifying where prisoners are charged high rates for basic telephone services.

9  (Dkt. No. 25 at 1-3.)  In 2013, HRDC staff members testified before the Federal

10  Communications Commission ("FCC") about capping prison phone rates, and the FCC cited

11  Plaintiff and HRDC more than forty-five times in its report and order implementing new

12  regulations of prison telecommunications companies.  (Dkt. No. 25 at 59-189.)  Plaintiff's FOIA

13  records requests in this case also sought information related to telephone practices and policies as

14  part of the same investigative project, this time targeted towards ICE's federal immigration

15  detention centers.  (Dkt. Nos. 24 at 7-9, 25 at 1-3.)

16         Plaintiff's first FOIA request was mailed to Defendants on July 30, 2013, and was signed

17  for by Defendants on August 5, 2013.  (Dkt. No. 25 at 3, 213-17.)  Plaintiff asserts that it never

18  received a response to this request.  (Id. at 3.)  Defendants assert that they issued a request

19  acknowledgment letter on August 7, 2013, and have produced evidence that a responsive letter

20  was generated, though not that it was mailed.  (Dkt. Nos. 29 at 4, 29-1.)  Regardless of whether

21  the response letter was sent or not, Plaintiff informed Defendants by letter dated December 21,

22  2013, that Plaintiff had not received any response but remained interested in the information.

23

24
ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT, DENYING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT- 2

1 (Dkt. No. 25 at 3, 219.)  It is uncontested that Defendants received but did not respond to the

2 second letter.  (Id.)

3      On April 2, 2014, Plaintiff filed this suit, alleging that Defendants were violating FOIA

4 by failing to respond to its two requests.  (Dkt. No. 1.)  Plaintiff then received the first round of

5 responsive records from ICE on August 1, 2014.  (Dkt. Nos. 25 at 3-4, 29.)  In the months

6 between September 2014 and February 2015, ICE produced several additional rounds of records

7 and several rounds of reprocessed and corrected records.  (Id.)

8      Portions of the produced records were redacted pursuant to FOIA Exemptions 4

9 (confidential commercial information), 6 (personal privacy), 7(C) (law enforcement personal

10 privacy), and 7(E) (law enforcement techniques and procedures).  (Dkt. Nos. 25 at 3-4, 29 at 12.)

11 In January 2015, Plaintiff amended its complaint to clarify that it sought to challenge not only

12 ICE's failure to timely respond to its FOIA requests (the only disputed issue at the time the suit

13 was filed), but also ICE's Exemption 4 and 7(E) redactions in the documents produced by ICE

14 between August and December 2014.  (Dkt. Nos. 24 at 11, 33.)

15      After Plaintiff amended its complaint and filed its motion for summary judgment arguing

16 that Defendants had failed to properly respond to its FOIA requests and had improperly redacted

17 non-exempt public information under Exemptions 4 and 7(E), ICE determined that information

18 redacted pursuant to Exemption 7(E) "had previously been publicly disclosed," and thus

19 produced the unredacted documents in full.  (Dkt. No. 28 at 2 n.1.)

20      Accordingly, the only remaining issue regarding redactions involves ICE's Exemption 4

21 redaction of Talton Communications, Inc.'s performance incentive rate, which reflects a

22 percentage of revenue earned by the phone services contractor that is set aside in escrow and

23 only paid to the contractor upon ICE's determination that Talton has performed the contract

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT, DENYING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT- 3

1   successfully.  (Dkt. Nos. 28, 36.)  ICE redacted the incentive rate used by Talton in its successful

2   2009 contract bid because it determined that disclosing the rate would result in competitive harm

3   to Talton when it bids for subsequent contracts, including the contract to be bid for in 2015.

4   (Dkt. Nos. 28, 37.)  Plaintiff contends the rate was improperly redacted because this information

5   is not exempt under proper application of Exemption 4.  (Dkt. Nos. 24, 36.)

6                                                  **Discussion**

7           I.        Legal Standard

8           Summary judgment is proper where "the movant shows that there is no genuine issue as

9   to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

10  56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue

11  of fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In assessing whether a party has met

12  its burden, the underlying evidence must be viewed in the light most favorable to the non-

13  moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

14          The Court conducts a de novo review of an agency's response to a FOIA request.  5

15  U.S.C. § 552(a)(4)(B); U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S.

16  749, 755 (1989).  When presented with a summary judgment motion in a FOIA case, courts

17  follow a two-step inquiry.  See, e.g., Los Angeles Times Commc'ns, LLC v. U.S. Dep't of the

18  Army, 442 F. Supp. 2d 880, 892-94 (C.D. Cal. 2006).  First, courts evaluate whether the agency

19  has met its burden of proving that it fully discharged its obligations under FOIA.  Zemansky v.

20  EPA, 767 F.2d 569, 571 (9th Cir. 1985) (citing Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344,

21  1350-1351 (D.C. Cir. 1983)).  To do this, the agency must demonstrate that it has conducted a

22  search reasonably calculated to uncover all relevant documents.  Id.  Second, if the agency

23  satisfies its initial burden, courts determine whether the agency has proven that the information

24
     ORDER GRANTING PLAINTIFF'S MOTION FOR
     SUMMARY JUDGMENT, DENYING
     DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT- 4

1  that it did not disclose falls within one of the nine FOIA exemptions. Dobronski v. FCC, 17 F.3d

2  275, 277 (9th Cir. 1994). In meeting its burden, the government may not rely on conclusory and

3  generalized allegations of exemptions. Church of Scientology of Cal. v. U.S. Dep't of the Army,

4  611 F.2d 738, 742 (9th Cir. 1980) (citing Vaughn v. Rosen, 484 F.2d 820, 826 (D.C. Cir. 1973)).

5  Furthermore, these exemptions "must be narrowly construed" so as not to undermine FOIA's

6  basic purpose: "to ensure an informed citizenry, vital to the functioning of a democratic society,

7  needed to check against corruption and to hold the governors accountable to the governed." John

8  Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (internal quotation marks and citations

9  omitted).

10      In sum, in order to prevail on summary judgment, the agency must prove "it has fully

11  discharged [these burdens] under FOIA, after the underlying facts and the inferences to be drawn

12  from them are construed in the light most favorable to the FOIA requester." Miller v. U.S. Dep't

13  of State, 779 F.2d 1378, 1382 (8th Cir. 1985) (citing Weisberg, 705 F.2d at 1350); see also

14  Zemansky, 767 F.2d at 571.

15      II.      Redactions Pursuant to Exemption 4

16      Plaintiff argues that Defendants cannot meet their burden of proving that Talton

17  Communications is likely to suffer substantial competitive harm if the performance incentive rate

18  from its successful 2009 detainee telephone services contract bid is disclosed, and therefore that

19  the performance incentive rate is not exempt from disclosure. (Dkt. Nos. 24 at 16, 36 at 5-8.)

20      The trade secret exemption to FOIA states, "[t]his section does not apply to matters that

21  are (4) trade secrets and commercial or financial information obtained from a person and

22  privileged and confidential." 5 U.S.C. § 552(b). "In order to invoke Exemption 4 in the Ninth

23  Circuit, the government agency must demonstrate that the information it sought to protect is (1)

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT, DENYING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT- 5

1   commercial and financial information, (2) obtained from a person or by the government, (3) that

2   is privileged or confidential." Watkins v. U.S. Bureau of Customs & Border Prot., 643 F.3d

3   1189, 1194 (9th Cir. 2011) (internal quotations marks omitted).  Commercial or financial

4   information is "confidential" for purposes of the exemption if disclosure of the information is

5   likely to have either of the following effects: "(1) to impair the Government's ability to obtain

6   necessary information in the future; or (2) to cause substantial harm to the competitive position

7   of the person from whom the information was obtained." Id.

8       Where, as here, resolution of the issue before the Court turns on the "substantial harm"

9   prong, the government need not show that releasing the information would cause "actual

10  competitive harm." Watkins, 643 F.3d at 1194.  Rather, the government need only show that

11  there is: "(1) actual competition in the relevant market, and (2) a likelihood of substantial

12  competitive injury if the information were released." Id.  "Competitive harm analysis is ...

13  limited to harm flowing from the affirmative use of proprietary information by competitors.

14  Competitive harm should not be taken to mean simply any injury to competitive position....

15  Although the court need not conduct a sophisticated economic analysis of the likely effects of

16  disclosure[,] ... [c]onclusory and generalized allegations of substantial competitive harm ... are

17  unacceptable and cannot support an agency's decision to withhold requested documents." Id. at

18  1195 (internal quotation marks and citations omitted).

19      Defendants argue that disclosure of the performance incentive rate would result in

20  substantial competitive harm to Talton Communications and would undermine the integrity of

21  the bidding process for ICE's future telephone services contracts because Talton's competitors

22  could use the information to underbid Talton.  (Dkt. No. 28 at 13-16.)  Defendants contend that

23  ICE considered three factors in awarding the 2009 telecommunications contract—(1) technical

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT, DENYING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT- 6

1  and management capabilities, (2) past performance, and (3) price—and that Talton was

2  successful in securing the 2009 contract because it offered the lowest price proposal that was

3  technically acceptable.  (Dkt. Nos. 28 at 14, 32 at 2-7, 38 at 6-8.)  Included in the price proposal

4  were the telephone rates to be charged to detainees—which are now posted publicly at ICE's

5  Northwest Detention Center and which were already disclosed to Plaintiff—and the performance

6  incentive rate.  (Id.)  Defendants submit that because Talton's telephone rates are available to its

7  competitors, the "only competitive edge Talton still has over its competitors in future bids is its

8  strategy regarding the percentage of the revenue the company agreed to set aside as a

9  performance incentive in order to win the current Detainee Telephone System contract."  (Dkt.

10  No. 32 at 7.)  Defendants also note that Talton invested considerable resources, including hiring

11  an outside consultant, to develop an attractive bid for the 2009 contract, which included

12  developing a "risk allocation approach" that Defendants contend would be revealed if the

13  performance incentive rate were disclosed.  (Dkt. Nos. 28 at 14-15, 31 at 1-6.)

14      Defendants have not met their burden of demonstrating a likelihood of substantial

15  competitive injury to Talton upon disclosure of its 2009 performance incentive rate, and

16  therefore the performance incentive rate is not exempt from disclosure under FOIA.  Defendants

17  base their arguments on the theory that disclosing Talton's 2009 performance incentive rate

18  would expose Talton's current risk tolerance, without reciprocal disclosures from its competitors,

19  therefore providing competitors with an unfair advantage in the bidding process for upcoming

20  contracts by allowing them to estimate and undercut Talton's bids.  (Dkt. Nos. 28 at 14, 31 at 3-

21  6, 32 at 5-7, 37 at 4, 38 at 6-8).  But the performance incentive rate to be disclosed would reveal

22  only Talton's risk tolerance in 2009, based on the state of the company then, as evaluated by a

23  consultant hired to craft a bid specifically for the 2009 contract.  (See Dkt. No. 31.)  There is no

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT, DENYING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT- 7

1  indication in the record that Talton Communications in 2015 is in exactly the same financial

2  position as it was in 2009; Talton today may have a higher or lower risk tolerance than it did in

3  2009.  Because Talton is free to determine its current risk tolerance separate from its 2009 risk

4  tolerance, disclosure of the 2009 rate will not provide Talton's competitors with insight into its

5  future bids for future contracts.  In other words, disclosure of the 2009 rate, without more, does

6  not allow competitors to "estimate and undercut" Talton's 2015 bid because there is no

7  indication that Talton will use the same rate in 2015.[1]  Furthermore, Defendants have provided

8  neither evidence nor argument to explain <u>how</u> disclosure of the 2009 rate would allow

9  competitors to reverse engineer Talton's entire business strategy or its current or future risk

10  tolerance.

11      Moreover, the record does not support Defendants' contentions that the performance

12  incentive rate was the "single distinguishing and important element of Talton's 2009 [detainee

13  telephone services] proposal which allowed Talton to win the award and will likely be just as

14  significant should Talton choose to compete for the follow-on [detainee telephone services]

15  contract." (Dkt. No. 37 at 4.)  Rather, the record shows that <u>price</u> was the deciding factor in

16  2009, and that the performance incentive rate was <u>one piece</u> of Talton's price proposal. (Dkt.

17  Nos. 32 at 2-7, 38 at 6-8.)  The record also shows that ICE evaluates a variety of factors when

18  choosing between proposals, and that the importance of any one of the factors fluctuates

19  according to ICE's evaluation of the proposal's other factors and sub-factors. (<u>Id.</u>)  ICE has

20  identified eight sub-factors for the technical and management capabilities category alone. (Dkt.

21

22      [1] Furthermore, it is unclear from the record when bidding for the 2015 contract is

23  expected to take place, and in fact it may have already occurred.  The Parties have specified that
    Talton's 2009 contract expired on May 12, 2015, (Dkt. No. 38 at 5), but have not specified when

24  a new contract will be bid for or will enter into effect.

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT, DENYING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT- 8

1    No. 32 at 4.)  That a contractor's performance incentive rate will be the single determinative

2    factor in a future bidding process is pure speculation, and, in light of "the strong public interest

3    in favor of disclosure," GC Micro Corp. v. Defense Logistics Agency, 33 F.3d 1109, 1115 (9th

4    Cir. 1994), cannot support a finding that Talton is likely to sustain substantial competitive harm

5    from disclosure of the performance incentive rate.

6         In sum, the Court finds that Talton's performance incentive rate is not exempt from

7    disclosure under FOIA because Defendants have not demonstrated a likelihood of substantial

8    competitive injury to Talton if the rate were disclosed.  Defendants must therefore disclose the

9    rate to Plaintiff.

10        III.    Excessive Delay in Responding to Requests

11        Plaintiff argues that, in addition to improperly redacting documents, Defendants violated

12   FOIA by failing to timely respond to its FOIA requests.  (Dkt. Nos. 24 at 11-13, 36 at 3-5.)

13   Plaintiff requests that the Court declare that ICE's delay in responding has violated the letter and

14   spirit of FOIA.  (Id.)  Defendants admit that they failed to timely respond to Plaintiff's requests,

15   but argue that that failure was inadvertent and that Plaintiff has already availed itself of the

16   proper remedy for that failure—filing suit for immediate judicial review without having to

17   exhaust administrative remedies. (Dkt. Nos. 28 at 16-17, 37 at 7-8.)

18        FOIA requires an agency to, within twenty days of receiving a record request, (1)

19   determine whether it will comply with a record request, and (2) notify the requester of its

20   determination and its reasoning.  5 U.S.C. § 552(a)(6)(A)(i).  The determination response must

21   include: (1) a statement of what the agency will and will not release; (2) the agency's rationale

22   for any withholdings; and (3) notice of the requester's right to appeal.  Id.  Where "unusual

23

24
ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT, DENYING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT- 9

1    circumstances" exist, the Act allows agencies to extend that deadline by as many as ten days.  5

2    U.S.C. § 552(a)(6)(B)(i).

3        Declaratory judgment, the granting of which is within the discretion of the Court, is

4    proper when there are purely legal questions at issue and if the judgment will clarify the legal

5    issues and provide clarity to the parties and the public.  Natural Res. Def. Council, Inc. v. EPA,

6    966 F.2d 1292, 1299 (9th Cir. 1992) (granting declaratory relief because the agency "does not

7    have the authority to ignore unambiguous deadlines set by Congress" in Clean Water Act case).

8        Defendants correctly note that where an agency fails to respond within the statutory time

9    period, the requestor is deemed to have constructively exhausted his or her administrative

10   remedies and may file suit in federal court.  (Dkt. No. 37 at 7) (citing 5 U.S.C. § 552(a)(6)(C)

11   and Citizens for Responsibility and Ethics in Wash. v. FEC, 711 F.3d 180, 188 (D.C. Cir. 2013).)

12   Exhaustion of administrative remedies aside, "[i]t seems fair to say that in the Ninth Circuit,

13   courts sometimes enforce FOIA's timeliness requirements independent of the underlying

14   disclosure issues, at least when the violation is 'egregious' or when there is a 'pattern or practice'

15   of delay."  Munger, Tolles & Olson LLP ex rel. Am. Mgmt. Servs. LLC v. U.S. Dep't of Army,

16   58 F. Supp. 3d 1050, 1054-55 (C.D. Cal. 2014) (collecting cases).  See, e.g., Oregon Natural

17   Desert Ass'n v. Gutierrez, 409 F. Supp. 2d 1237, 1247-48 (D. Or. 2006) (holding that an eight

18   month delay was "a violation of FOIA, regardless of the final outcome of the request").

19       The Court finds the delay in responding to Plaintiff's requests to be egregious.  It is

20   uncontested that Plaintiff did not receive ICE's first production of documents (or any other

21   determination) until 361 days after mailing its first FOIA request letter, seven months after

22   mailing its second request letter, and almost four months after filing this lawsuit.  (Dkt. Nos. 25

23   at 2-4, 29 at 12-14.)  Production of the remainder of the requested documents was not completed

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT, DENYING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT- 10

1   for several additional months.  (Id.)  Response times of this sort clearly exceed the unambiguous

2   time allowance contemplated by Congress.  See 5 U.S.C. § 552(a)(6)(A)(i).  Consequently, the

3   Court hereby declares that, independent of the exemption issues, Defendants violated FOIA by

4   failing to make a timely determination on Plaintiff's requests.

5         IV.    Attorney's Fees

6         As the prevailing party, Plaintiff is eligible for reasonable attorney's fees and costs.  5

7   U.S.C. § 552(a)(4)(E); Church of Scientology of Cal. v. U.S. Postal Serv., 700 F.2d 486, 489

8   (9th Cir. 1983).  The Court finds that an award of fees and costs is appropriate in this case, and

9   that Plaintiff is entitled to such an award.  See Church of Scientology of Cal., 700 F.2d at 492-

10   93.  Therefore, Plaintiff is hereby awarded reasonable attorney's fees and costs, and must

11   petition the Court for a determination of fees and costs within thirty (30) days of the date of this

12   order, if the Parties are unable to agree on a determination.

13                **Conclusion**

14         Because Defendants have violated FOIA by failing to timely respond to Plaintiff's

15   requests and have failed to prove that Talton's performance incentive rate falls within one of

16   FOIA's exemptions, the Court GRANTS Plaintiff's Motion for Summary Judgment and

17   DENIES Defendants' Cross-Motion for Summary Judgment.  Plaintiff is awarded reasonable

18   attorney's fees and costs, in an amount to be determined later should the Parties be unable to

19   agree on a determination.

20         /

21         /

22         /

23         /

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT, DENYING
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT- 11

1          The clerk is ordered to provide copies of this order to all counsel.

2

3          Dated this 18th day of June, 2015.

4

5

6                                                          Marsha J. Pechman
                                                           Chief United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
   ORDER GRANTING PLAINTIFF'S MOTION FOR
   SUMMARY JUDGMENT, DENYING
   DEFENDANTS' MOTION FOR SUMMARY
   JUDGMENT- 12